**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**CELL GENESYS, INC.,**

       **Plaintiff,**

        **v.**

**APPLIED RESEARCH SYSTEMS ARS**
**HOLDING, N.V.,**

       **Defendant.**

**Civil Action No.  04-1407 (JDB)**

---

**<u>MEMORANDUM OPINION</u>**

On January 18, 2005, this Court issued a decision denying the motion of defendant

Applied Research Systems ARS Holding, N.V. ("ARS") to transfer this action to the United States

District Court for the District of Massachusetts, where a parallel patent interference action brought

by ARS is pending.  The Court assessed the various public and private factors relevant to transfer

pursuant to 28 U.S.C. § 1404(a), and concluded that although the issue was close, a sufficiently

strong case for transfer was not presented.  However, the Court noted that "judicial economy

remains a very important consideration," that "duplicative parallel proceedings in the two courts

should be avoided if at all possible," and that accordingly "considerations of judicial economy

constitute the governing factor relating to transfer under the circumstances of this case."  Mem.

Op. (Jan. 18, 2005) at 11-13.

At that time, it was uncertain whether the District of Massachusetts action would proceed

there in light of a personal jurisdiction issue with respect to Cell Genesys, Inc. ("CGI"), the

plaintiff in this Court and the defendant in the Massachusetts action.  The issue was pending

before Judge Wolf in the District of Massachusetts.  This Court noted that "if Judge Wolf were to

decide that there is personal jurisdiction over CGI in the District of Massachusetts, no apparent impediment to transfer of this case to the District of Massachusetts remains." Mem. Op. (Jan. 18, 2005) at 12.

Judge Wolf has now denied CGI's motion to dismiss, finding that CGI is subject to general personal jurisdiction in Massachusetts based on the number and significance of CGI's business relationships with Massachusetts companies as well as research and clinical trial relationships with Massachusetts entities. See ARS Supp'l Brief in Support of Transfer, Ex. B (Tr. of Oct. 18, 2005 Motion Hearing) at 50-57 ("Ex. B"). Judge Wolf concluded that the collective contacts with Massachusetts in eight distinct ways were "regular, continuous, and systematic," and hence sufficient to establish personal jurisdiction. Id. at 54.

On October 20, 2005, Judge Wolf stayed ARS's action against CGI in the District of Massachusetts to enable this Court to reexamine the transfer issue. ARS Supp'l Brief in Support of Transfer, Ex. C (Order dated Oct. 20, 2005) at 1-2; see Ex. B at 59. He also made several observations at the motion hearing to assist the transfer analysis. He observed that he does "not object to the transfer of the District of Columbia interference case to Massachusetts,"[1] that this Court should not assume that he has greater expertise in interference issues, and that "[i]t may be most efficient to have one judge handle all of the issues relating to the patent if one judge has jurisdiction over all the parties. Judge Bates, as I understand it, does not have and cannot get

---

[1] Judge Wolf noted that there was some risk that, based on further evidence, he could later conclude that there was no personal jurisdiction in Massachusetts, in which event the case would have to be transferred back here. See Ex. B at 59.

jurisdiction over TKT." Ex. B at 59-60.[2]  He went on to state that if this case were transferred

there, "it would be my intention to maintain Judge Bates' schedule. . . .  [A] transfer should not

entail any delay or any material delay." Id. at 60.

 ARS has now reasserted its request for transfer of this case to the District of Massachusetts

and this Court has requested and received further briefing from the parties.  Several reasons lead

the Court to conclude that transfer is the better course at this time.  The basic framework for

analysis remains as described in the Court's January 18, 2005 decision.  A few factors may have

changed slightly -- for example, reliance on Judge Wolf's expertise may not be warranted with

respect to interference issues -- but the conclusion to transfer rests primarily on three

considerations.

 First, and foremost, judicial economy is still the overriding concern, and now strongly

favors transfer.  As both this Court and Judge Wolf have recognized, transferring this case to the

District of Massachusetts will avoid duplicative proceedings requiring two judges to expend

considerable time and effort to learn the scientific and patent-law issues involved in these actions.

The interference cases will involve the same facts, law and issues.  Moreover, there will be

substantial overlap in facts and issues between the interference case and the related infringement

action against TKT, which can only proceed in Massachusetts.  Accordingly, considerations of

judicial economy, which are an overriding factor, strongly support transfer of this case to the

District of Massachusetts.  See Mem. Op. (Jan. 18, 2005) at 11-13.

---

 [2]  TransKaryotic Therapies, Inc. ("TKT") is the defendant in a pending patent infringement
action brought by ARS and joined with ARS's interference action against CGI in the District of
Massachusetts.  There is no dispute that this Court would not have personal jurisdiction over
TKT.

CGI's assertion that concerns over judicial economy have been satisfied is not convincing. Although Judge Wolf has indicated that he will stay the Massachusetts interference case if this case is not transferred, retaining the interference action here would likely mean that, in addition to this Court's efforts, Judge Wolf would also have to become fully versed in the legal, scientific and factual background and issues in the context of the TKT infringement action, which can only be litigated in Massachusetts, not here.  That would be an inefficient result.

Second, Massachusetts plainly has a greater interest in this matter than does the District of Columbia.  Judge Wolf's ruling that CGI is subject to general personal jurisdiction in Massachusetts confirms that CGI has had a continuous, substantial business presence in Massachusetts and that the resolution of the case will significantly affect TKT's business interests in Massachusetts.  On the other hand, as this Court has previously noted, the District of Columbia has no connection whatsoever with this action.

CGI's pledge that it will again seek on summary judgment to convince Judge Wolf that it is not subject to personal jurisdiction in Massachusetts is not a reason for this Court to deny transfer.  It is not at all clear that CGI can make the necessary showing on the facts that it has no substantial connections to Massachusetts, and it certainly has not yet done so.[3]  The possibility of such an approach by CGI is not enough, and if CGI chooses that course then presumably ARS could seek jurisdictional discovery, which to date has not been available to ARS.  In any event, this Court is disinclined to deny transfer based on CGI's threat to continue its challenge to

_____

[3] CGI has focused solely on its clinical trials in Massachusetts, but has not addressed the other CGI connections to Massachusetts noted, and relied upon, by Judge Wolf.

personal jurisdiction in Massachusetts and its speculation about the outcome of that threatened challenge.

Third, transfer will not result in any delay or prejudice to CGI.  Judge Wolf has stated that he intends to maintain the current discovery schedule, and therefore that "a transfer should not entail any delay or any material delay."  In fact, little discovery has actually occurred according to ARS, and any exchange of documents accomplished to date in this action can certainly be used in the District of Massachusetts in the combined interference action.  Hence, the fact that this action is further along the litigation trail should not result in any delay or prejudice upon transfer, because the greater "maturity" of this case noted by CGI will go to Massachusetts with the transfer in light of Judge Wolf's observations.

Therefore, for all these reasons -- especially considerations of judicial economy -- and taking into account the public and private factors assessed in the Court's previous decision, ARS's motion to transfer pursuant to 28 U.S.C. § 1404(a) will be granted.  This case will accordingly be transferred to the United States District Court for the District of Massachusetts.  A separate order has been issued on this date.

  /s/     John D. Bates        
                JOHN D. BATES
             United States District Judge

Dated:  November 14, 2005

Copies to:

Steven B. Kelber
Merchant & Gould
901 15th Street, NW
Suite 850
Washington, DC 20005
(202) 326-0300
Fax: (202) 326-0778
Email: skelber@merchant-gould.com
     *Counsel for plaintiff*

Bradford P. Lyerla
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6367
(312) 474-6300

Cullen N. Pendleton
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6367
(312) 474-6300

Frank J. West
OBLON, SPIVAK, MCCLELLAND, MAIER & NEUSTADT
1940 Duke Street
Alexandria, VA 22314
(703) 412-7049
Fax: (703) 413-2220

Kevin M. Flowers
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6357
(312) 474-6300
Email: kflowers@marshallip.com

Matthew C. Nielsen
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6367
(312) 474-6300
Email: mnielsen@marshallip.com

Michael F. Borun
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6367
(312) 474-6300
Email: mborun@marshallip.com

Sandip H. Patel
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6367
(312) 474-6300

William K. Merkel
MARSHALL, GERSTEIN & BORUN LLP
6300 Sears Tower
233 South Wacker Drive
Chicago, IL 60606-6367
(312) 474-6300

Charles L. Gholz
OBLON, SPIVAK, MCCLELLAND, MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000
Fax: (703) 413-2220
Email: cgholz@oblon.com

*Counsel for defendant*